**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LIONEL DOTY,                          )   NO. EDCV 09-01403-SS
                                      )
                Plaintiff,            )
                                      )
        v.                            )   **MEMORANDUM DECISION AND ORDER**
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of the Social            )
Security Administration,              )
                                      )
                Defendant.            )
_____ )

**I.**

**INTRODUCTION**

    Lionel Doty ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on September 20, 2006. (Administrative Record ("AR") 73-79). He alleged a disability onset date of September 4, 2006, (AR 73, 77), for muscle pain due to a gun shot wound to the right chest and abdomen. (AR 14). Plaintiff further alleged that the pain was triggered when bending or stooping. (Id.).

The Agency denied Plaintiff's claim for DIB and SSI initially on January 5, 2007. (AR 40-44). This denial was upheld upon reconsideration on February 23, 2007. (AR 46-50). Plaintiff then requested a hearing, (AR 51-53), which was held by video before Administrative Law Judge ("ALJ") Thomas P. Tielens on April 24, 2008. (AR 10). Plaintiff appeared without counsel and testified. (AR 19-35). Plaintiff's mother, Kathleen Cain, and a vocational expert also testified. (Id.).

On August 15, 2008, the ALJ issued a decision denying benefits. (AR 7-9). Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied his request on June 4, 2009. (AR 1-3). The ALJ's decision therefore became the final decision of the Commissioner. (Id.). Plaintiff commenced the instant action on July 13, 2009. Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on March 1, 2010.

\\

\\

**III.**

**FACTUAL BACKGROUND**

Plaintiff was born on January 2, 1958 and was fifty-years old at the time of the hearing. (AR 84). His highest grade of education is seventh grade. (AR 92). Plaintiff speaks, reads, and writes English. (AR 87). Plaintiff's past work experience has been as a cook. (AR 89).

**A.   Plaintiff's Medical History**

Plaintiff's injury occurred in September 2006. According to medical records from Loma Linda University Medical Center ("Loma Linda") dated September 3 to September 25, 2006, Plaintiff underwent several surgeries and tests for a "post gunshot wound to the right chest wall with the bullet trajectory traversing through the lower anterior mediastinum into the abdomen, with the bullet terminating within the pelvis." (AR 136-61). The surgeries were for the repair of the initial chest and abdominal trauma and liver laceration, exploration and complications related to the gunshot wound, and finally for permanent closure of the abdominal wound. (Id.). The Loma Linda medical records further indicated gradual improvement in Plaintiff's condition with some complaints of abdominal pain by Plaintiff. (Id.).

Beginning in October 2006, Plaintiff was treated at Arrowhead Regional Medical Center ("Arrowhead Regional"). (AR 247-62, 270-300). The Arrowhead Regional medical reports revealed that Plaintiff initially sought follow-up treatments to have his abdominal wound checked. (AR 248-62, AR 281-92). The initial reports further revealed that Plaintiff

consistently complained of abdominal pain.  (Id.).  However, from March 2007 to March 2008 (shortly before April 24, 2008 hearing), Plaintiff consistently and on several occasions reported that he had experienced very little (two on a scale of ten) to no pain.   (AR 271-80). Furthermore, during that time period, Plaintiff was treated only for symptomatic treatment of other medical conditions including hypertension and hepatitis C.  (Id.).  Plaintiff was also prescribed medication for his pain, high blood pressure, and cholesterol.  (AR 26).

## B.   State Agency Physicians

On December 29, 2006, medical consultant D. B. Rose, M.D., ("Dr. Rose"), reviewed Plaintiff's medical records for the Disability Determination Service ("DDS") and issued a Physical Residual Functional Capacity Assessment.  (AR 236-42).  Dr. Rose's case analysis detailed an extensive summary of Plaintiff's surgeries and injuries to determine Plaintiff's residual functional capacity ("RFC").[1]  (AR 241-42).  Dr. Rose reported that Plaintiff could occasionally lift and/or carry twenty pounds, could frequently lift and/or carry ten pounds, could stand, walk or sit for about six hours per eight hour work day, and had unlimited pushing and pulling abilities.  (AR 237).  Additionally, Dr. Rose checked the boxes indicating that Plaintiff's injury did not affect his ability to occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch or crawl, however the injury did limit Plaintiff's ability

---

[1]     Residual functional capacity is "the most [one] can still do despite [one's] limitations" and represents an assessment "based on all the relevant evidence in [one's] case record."   20 C.F.R. §§ 404.1545(a), 416.945(a).

to climb ladders, ropes and/or scaffolds.  (AR 238).  Dr. Rose noted that after taking into consideration the most restrictive of scenarios, and giving the Plaintiff the benefit of the doubt, she suggested Plaintiff's capacity for a range of work at the light exertional level. (AR 241).

On February 21, 2007, after reviewing Plaintiff's medical file and detailing Plaintiff's surgeries, medical consultant M. H. Yee, M.D. reported the same conclusion as Dr. Rose's assessment of Plaintiff's residual functional capacity for a range of work at the light level. (AR 263).

**C.   Plaintiff's Testimony**

On April 24, 2008, Plaintiff appeared at a hearing before the ALJ. (AR 19).  Plaintiff testified that he had five operations on his stomach due to a gunshot wound in September 2006.  (AR 25).  He stated that he was initially treated at Loma Linda for the wound and then went to Arrowhead Regional for follow-up treatments.  (See AR 22).  As a result of his surgeries, Plaintiff explained that he had muscle pain in the morning, when he came home from work, and in the evening.  (AR 26).  He further described his pain as coming from his stomach muscles, and usually occurring when he stooped or bent over.  (Id.).

Plaintiff testified he took medications for his high blood pressure, cholesterol, and pain.  (AR 26).  He further noted that since getting out of the hospital, he had been taking Norco daily for pain.

1  (Id.).   Although  Plaintiff  indicated  he  had  diabetes,  Plaintiff
2  testified that his diabetes no longer affected him.  (AR 26-27).

4      Plaintiff also testified that he went back to work as a short order
5  cook in November 2007.  (AR 23).  He worked four to five hours a day,
6  five days a week.  (Id.).  Plaintiff explained that while he worked, he
7  stood most of the time, but was able to sit down when business was slow.
8  (AR 24).   Plaintiff  also  stated  that  he  was  able  to  lift  up  to  30
9  pounds.  (Id.).

11      The ALJ questioned Plaintiff regarding his activities at the time
12  of the hearing.  (AR 27).  Plaintiff responded that he lived alone.
13  (Id.).  He drove himself to and from work as well as to the grocery
14  store.  He also frequently visited his mother.  (AR 27, 30).  Plaintiff
15  further stated that he cleaned his house and collected cans and bottles
16  around his mother's complex to make money.  (AR 30).

18  **D.   Vocational Expert's Testimony**

20      Linda Berkley testified at the April 24, 2008 hearing as a
21  vocational expert ("VE").  (AR 31-33).  After the VE heard Plaintiff's
22  testimony and reviewed Plaintiff's file, the ALJ posed two hypotheticals
23  to the VE.  (AR 33-34).  In both, the VE considered a person "the same
24  age as [Plaintiff], who ha[d] the same educational background and past
25  work experience."   (AR 33).   In the first hypothetical, the ALJ
26  described a person that "could do light work; only occasionally climb,
27  balance, stoop, crouch, or crawl; should not use ladders, ropes or
28  scaffolds."  (Id.).  Given this hypothetical, the VE found that such a

person could not perform any of Plaintiff's past work as a cook.  (Id.).
The VE determined, however, that such a person could find available work
in the national or local economy as a short order cook or lunch cook.
(Id.).

The second hypothetical was identical to the first, except with the
restriction that the person could not "perform work on a 40-hour
workweek, but could probably perform at most 20 to 25 hours."  (Id.).
With that change, the VE determined that the person could not maintain
competitive employment.  (Id.).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate  a
medically determinable physical or mental impairment that prevents him
from engaging in substantial gainful activity[2] and that is expected to
result in death or to last for a continuous period of at least twelve
months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42
U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant
incapable of performing the work he previously performed and incapable
of performing any other substantial gainful employment that exists in
the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.
1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[2]   Substantial gainful activity means work that involves doing
significant and productive physical or mental duties and is done for pay
or profit.  20 C.F.R. §§ 404.1510, 416.910.

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)   Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted).

8

1    The claimant has the burden of proof at steps one through four, and
2  the Commissioner has the burden of proof at step five.  <u>Bustamante</u>, 262
3  F.3d at 953-54.   If, at step four, the claimant meets his burden of
4  establishing an inability to perform past work, the Commissioner must
5  show that the claimant can perform some other work that exists in
6  "significant numbers" in the national economy, taking into account the
7  claimant's RFC, age, education, and work experience.  <u>Tackett</u>, 180 F.3d
8  at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),
9  416.920(g)(1).  The Commissioner may do so by the testimony of a VE or
10  by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R.
11  Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").
12  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001).   When a
13  claimant has both exertional (strength-related) and nonexertional
14  limitations, the Grids are inapplicable and the ALJ must take the
15  testimony of a VE.  <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000).

16
17                                **V.**
18                        **THE ALJ'S DECISION**
19

20    The ALJ employed the five-step sequential evaluation process and
21  concluded that Plaintiff was not disabled within the meaning of the
22  Social Security Act.  (AR 11-12, 15).   At the first step, the ALJ
23  observed that although Plaintiff returned to work on a part-time basis,
24  for 20-25 hours a week, as a short order cook for $7.00 per hour, the
25  work did not rise to the level of substantial gainful activity.  (AR 12).
26  Thus, the ALJ concluded that Plaintiff had not engaged in substantial
27  gainful activity at any time relevant to his decision.  (<u>Id.</u>).   At step
28  two, he found that Plaintiff had the severe impairments of status post

gun shot wound to the right chest and abdomen.  (Id.).  However, the ALJ concluded that Plaintiff's hypertension, diabetes, and hepatitis C were not severe impairments.  (AR 13).

At the third step, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment.  (AR 13).  Next, at step four, the ALJ found that Plaintiff could no longer perform his past work, but he retained the RFC to perform light work with restrictions.  (AR 13-14).  Specifically, the ALJ found that Plaintiff had the RFC to perform light work with "limitation to occasional climbing, balancing, stopping, crouching and crawling and preclusion from climbing ladders, ropes and scaffolds."  (AR 13).

Finally, at step five, the ALJ concluded that, based on Plaintiff's RFC and the testimony of the VE, Plaintiff could perform work as a short order cook or lunch cook.  (AR 15).  Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision.  (Id.).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

## VII.

### DISCUSSION

Plaintiff contends the ALJ erred for three reasons: (1) the ALJ did not properly develop the record, (Jt. Stip. at 3-4); (2) the ALJ did not consider the lay witness testimony, (Id. at 6-7); and (3) the ALJ did not properly consider the Plaintiff's testimony. (Id. at 9-11). For the reasons discussed below, the Court disagrees with all of Plaintiff's contentions.

**A.   The ALJ Properly Developed the Record**

Plaintiff contends that the ALJ failed to fully develop the record because the ALJ did not take into consideration Plaintiff's "disability paperwork" noted on Plaintiff's medical record of January 26, 2007. (Jt. Stip. at 3). The Court disagrees with Plaintiff's contention.

11

The ALJ has an affirmative duty to fully and fairly develop the record in a social security case. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).   The duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests.   Id.   However, only ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct a further inquiry or gather additional information.   Id.; see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (no duty triggered where the ALJ did not find that the medical report was inadequate to make a disability determination).

Here, the ALJ's duty was not triggered because there was no ambiguity or inadequacy that required further development.   See Thomas, 278 F.3d at 958; Tonapetyan, 242 F.3d at 1150.   Further, the ALJ fully developed the record by questioning Plaintiff about his medical records, impairments, pain, medications, as well as his work and daily activities. (AR 19-35).   The ALJ properly relied on reports from medical consultants, Dr. Rose, (AR 236-42), and Dr. Yee, which were amply supported by objective findings.   (AR 263).   The ALJ also asked Plaintiff if there was anything else he wanted to add to the record.   (AR 30, 34).   Thus, the record was adequately and fully developed to determine Plaintiff's disability determination.

Furthermore, the Commissioner will recontact medical sources only when the medical evidence "is inadequate" for the Commissioner to determine whether a claimant is disabled.   20 C.F.R. § 416.912(e).   The Commissioner will either seek additional evidence or clarification from

the treating physician when a medical report contains a "conflict" or an "ambiguity" that must be resolved.  20 C.F.R. § 416.912(e)(1).  Here, there were no conflicts or ambiguities that had to be resolved, nor did the ALJ make such a finding.  (See 12-16).  Although Plaintiff claimed that the "disability paperwork" was necessary to fully develop the record, (Jt. Stip. at 3), Plaintiff does not contend that the "disability paperwork", if it existed, would prove his problems were worse than what the records in the administrative record showed.  (See Jt. Stip. at 3-4).  Nor did he present any new medical evidence to the Appeals Council or to this Court.  (AR 1-3, 5-6, 16).  Instead, he merely speculated that the "disability paperwork" filled out by the Plaintiff's treating physician had direct relevance to Plaintiff's disability claim.  (Jt. Stip. at 3).  However, mere conjecture or speculation that additional evidence might have been obtained and might have shown disabling impairments is insufficient to warrant a remand.  Thus, the ALJ's duty was not triggered because there was no ambiguity or inadequacy that required further development.

Plaintiff argues that the ALJ did not fully develop the record and could have discharged his duty if he had contacted the Plaintiff's treating physician, requested copies of the disability paperwork, subpoenaed the Plaintiff's physicians, continued the hearing or kept the record open after the hearing to allow supplementation of the record in order to assess his opinion of Plaintiff's disability.  (Jt. Stip. at 3).  This Court disagrees, finding that the ALJ's duty was satisfied when the Agency sent requests for information to all of Plaintiff's listed treating doctors (as discussed below), (AR 135, 247, 269), and when the

ALJ kept the record open for Plaintiff to supplement it with additional information.  (AR 34).

The Agency requested documents from Loma Linda on October 23, 2006, (AR 135), and Arrowhead Regional on January 31, 2007, (AR 247), and again on July 1, 2008.  (AR 269).  At the hearing, the ALJ questioned Plaintiff about his medical records, (AR 22), and explained to Plaintiff the medical records the ALJ had in its possession.  (AR 21-22).  The ALJ then told Plaintiff that he would keep the record open for at least a week so that Plaintiff could submit additional evidence to supplement the record.  (AR 34).  The ALJ specifically stated, "if there's something you think about between now and in about a week or so, whenever it's likely to get that information, you can send something to the address that you have their on the paperwork."  (Id.).  Thus, the duty was satisfied when the Agency requested Plaintiff's medical records, as identified by Plaintiff, and the ALJ kept Plaintiff's record open for at least an additional week.  Tidewell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998, as amended, 1999).  Furthermore, Plaintiff obtained counsel on September 23, 2008 (only one month after the ALJ issued his decision), yet no effort was made to submit new evidence to the Appeals Council or to this Court for review.  (AR 1-3, 5-6, 16).

Therefore, the Court finds that the ALJ had no duty to further develop since there were no inadequacies or ambiguities that needed to be resolved.  The ALJ's duty was satisfied when the Agency sent requests for information to Plaintiff's listed treating doctors, (AR 135, 247, 269), and when the ALJ kept the record open for at least a week for Plaintiff to submit any other medical evidence that he thought was

relevant.   (AR 34).   Accordingly, Plaintiff's claim does not warrant
remand.

**B.   The Fact That The ALJ Did Not Expressly Consider The Lay Witness
Testimony, Which Essentially Repeated Plaintiff's Testimony, Does
Not Require Remand**

Plaintiff contends that the ALJ failed to properly consider lay
witness testimony. (Jt. Stip. at 6-7). Specifically, Plaintiff argues
that the ALJ did not consider the statements of Plaintiff's mother,
Kathleen Cain ("Ms. Cain"). (Jt. Stip. at 6). The Court disagrees with
Plaintiff's contention.

In determining whether a claimant is disabled, an ALJ must consider
lay witness testimony concerning a claimant's ability to work. Stout v.
Commissioner, 454 F.3d 1050, 1053 (9th Cir. July 25, 2006); Smolen, 80
F.3d at 1288; 20 C.F.R. §§ 404.1513(d)(4) & (e), and 416.913(d)(4) &
(e).  The ALJ may discount the testimony of lay witnesses only if she
gives "reasons that are germane to each witness." Dodrill v. Shalala,
12 F.3d 915, 919 (9th Cir. 1993); see also Lewis v. Apfel, 236 F.3d 503,
511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is
competent evidence that an ALJ must take into account, unless he or she
expressly determines to disregard such testimony and gives reasons
germane to each witness for doing so." (citations omitted)).

If an ALJ fails to expressly consider lay witness testimony, the
Court must determine whether the ALJ's decision remains legally valid,
despite such error. Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d

15

1155, 1162 (9th Cir. 2008).   If the ALJ's ultimate credibility
determination and reasoning are adequately supported by substantial
evidence in the record, no remand is required.  <u>Id.</u> (citing <u>Batson v.
Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

Plaintiff contends that the ALJ failed to consider Ms. Cain's
testimony of Plaintiff's six surgeries and complaint of muscle pain in
his stomach when he bent over.  (Jt. Stip. at 6).  However, Ms. Cain's
statements essentially mirrored that of Plaintiff's own testimony and did
not strengthen Plaintiff's impairment claims.  Like Ms. Cain, Plaintiff
specifically stated during direct testimony that he had five to six
operations.  (AR 22, 23, 25).  Plaintiff further stated throughout his
testimony that he had muscle pain particularly when he stooped or bent
over.  (AR 22, 23, 25, 26).  Plaintiff testified to all the same
limitations noted by Ms. Cain and the ALJ considered these limitations
in his opinion.  (AR 13-14).  Specifically, the ALJ took into
consideration that Plaintiff had "six surgeries on his stomach," (AR 13)
and that Plaintiff continued to "experience daily muscle pain with
activities such as stooping and bending." (<u>Id.</u>).  Ms. Cain's statements
failed to add any additional information for the ALJ to consider.

Furthermore, even if the ALJ erred by not providing specific reasons
for rejecting Ms. Cain's statements, any error was harmless.  This Court
concludes that no reasonable ALJ would have reached a different decision
based upon this evidence, even if Ms. Cain's statements were fully
credited.  <u>See</u> <u>Stout</u>, 454 F.3d at 1056 ("[Where the ALJ's error lies in
a failure to properly discuss competent lay testimony favorable to the
claimant, a reviewing court cannot consider the error harmless unless it

can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different determination."). The ALJ's decision was legally valid and supported by substantial evidence, even if it was error not to expressly discuss Ms. Cain's testimony. As the decision remains legally valid, it must be affirmed. See Carmickle, 533 F.3d at 1162 (relevant inquiry for harmless error analysis in social security context is whether the ALJ's decision remains legally valid, despite error).

## C.   The ALJ Provided Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony

Plaintiff asserts that the ALJ failed to provide "specific, cogent reasons" for finding that Plaintiff's subjective pain complaints were not fully credible. (Jt. Stip. at 10). Plaintiff also argues that the ALJ did not provide "clear and convincing reasons" for rejecting Plaintiff's testimony. (Jt. Stip. at 11). The Court disagrees with Plaintiff's contention.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (internal quotation marks omitted). The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some

17

degree of the symptom." Id. (quoting Smolen, 80 F.3d at 1282).  Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

The ALJ cited no affirmative evidence that Plaintiff was malingering. (See AR 10-16).  He found that Plaintiff had a severe impairment likely to produce some pain.  (AR 14).  However, the ALJ determined that the Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [we]re inconsistent with the residual functional capacity assessment."  (Id.). The ALJ gave several specific, clear and convincing reasons for finding Plaintiff's subjective complaints not credible including Plaintiff's part-time work, medical records, treatment, and daily activities.  (Id.).

### 1.   Plaintiff's Part-Time Work

First, the ALJ found that Plaintiff's part-time work was inconsistent with the level of his claimed pain.  (AR 14).  Plaintiff stated that he was unable to work as of September 2006, (AR 25), because of "severe and recurring pain in his stomach due to six successive surgeries."  (Jt. Stip. at 9).  Plaintiff testified that the pain usually occurred when he stooped or bent over.  (AR 26).

The ALJ noted that Plaintiff returned to work (after his alleged disability onset date) on a part-time basis in November 2007 and "found a way to accommodate his occasional muscular pain and fatigue."  (AR 14).

The Plaintiff worked 20-25 hours a week as a short order cook, and was paid $7.00 per hour.  (AR 13).  The Plaintiff also testified that he was able to lift between 30-35 pounds while working.  (AR 24).  This is consistent with the ALJ's conclusion that Plaintiff's return to work on a limited basis suggested he retained the ability to work at the light exertional level.  (AR 14-15).

### 2.   Plaintiff's Medical Records

Second, the ALJ considered Plaintiff's medical records by relying on the opinions of medical consultants, D. B. Rose, M.D. ("Dr. Rose"), and M. H. Yee, M.D. ("Dr. Yee") in assessing Plaintiff's credibility.  (AR 14, 236-42, 263-64).  The ALJ noted that "in arriving at the [] residual functional capacity, [he] credit[ed] the January and February 2007 opinions of the DDS medical advisors to the extent that [Dr. Rose and Dr. Yee] indicated the capacity for a range of work at the light exertional level with postural limitations consistent with the [] residual functional capacity."  (AR 14).

On December 29, 2006, Dr. Rose took into account Plaintiff's entire medical record when she assessed Plaintiff's RFC.  This is evident in her report which specifically delineated each of Plaintiff's surgeries for a gunshot wound to the right chest and abdomen.  (AR 241-42).  Even after "considering [the] most restrictive of scenarios, and giving the claimant the benefit of the doubt," (AR 241), Dr. Rose concluded that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk and sit for about six hours in an eight-hour workday; climb ramps/stairs, balance, kneel, crouch and crawl occasionally; and

1  never climb ladders, ropes, and scaffolds.  (AR 237-38).  On February 21,
2  2007, after taking into consideration all of Plaintiff's medical records
3  and noting that Plaintiff's most recent CT scan had shown improvement in
4  the liver hematoma, Dr. Yee affirmed Dr. Rose's assessment of Plaintiff's
5  residual functional capacity for a range of work at the light level.  (AR
6  263).  Dr. Rose's and Dr. Yee's RFC determination was consistent with and
7  supported by objective medical evidence.  Therefore, the ALJ properly
8  rejected Plaintiff's credibility as to his subjective complaints because
9  the medical evidence did not support limitations greater than his RFC.

11  **3.  Plaintiff's "Conservative Treatment"**

13     The Ninth Circuit previously held that "conservative treatment" is
14  sufficient to discount a claimant's testimony regarding the severity of
15  an impairment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citing
16  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)).  Here, the ALJ
17  noted that "despite claimant's allegations of ongoing muscle pain and
18  fatigue, he sought relatively little treatment since the initial round of
19  surgeries in September 2006."  (AR 14).

21     On September 4, 2006, Plaintiff sought medical treatment for a
22  gunshot wound at Loma Linda.  (AR 135-61).  Subsequent to being released
23  from Loma Linda, Plaintiff, as a follow-up to his surgeries, went to
24  Arrowhead Regional.  (AR 248-62, 270-300).  According to Plaintiff's
25  medical records between October 2006 to January 2007, Plaintiff complained
26  of abdominal pain.  (AR 248-62, AR 281-92).  However, from March 2007 on,
27  the medical records reflected that Plaintiff had little (two on a scale
28  of ten) to no pain, (AR 271-80), and indicated only "symptomatic treatment

for other medical conditions including hypertension and hepatitis C." (AR 24). Such infrequent complaints belie Plaintiff's allegations of chronic and severe muscle pain. See Smolen, 80 F.3d at 1284 (failure to seek treatment may be a reason for rejecting claimant's testimony regarding the severity of her pain). As such, the ALJ's observation, that Plaintiff's treatment(only his regular pain medication (AR 13)) did not corroborate the level of pain and limitations Plaintiff reported, is a legitimate reason for finding Plaintiff's testimony not credible.

### 4.    Plaintiff's Daily Activities

Lastly, Plaintiff's daily activities were inconsistent with his testimony. Barnhart, 278 F.3d at 958-59 (holding that the ALJ properly relied on the inconsistencies between a plaintiff's complaints and daily activities in assessing credibility). The ALJ noted that Plaintiff lived alone and was able to drive himself and take care of all of his activities of daily living (i.e., going to the grocery store and cleaning his house (AR 27, 30)) without help from others. (AR 14). These activities were inconsistent with Plaintiff's claim of disabling pain. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities, including household chores such as visiting relatives and driving).

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons for rejecting Plaintiff's subjective pain. Accordingly, the ALJ did not err in rejecting Plaintiff's credibility, and therefore, Plaintiff's claim does not warrant remand.

\\

# VIII.

## CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 8, 2010.


                                        _____/S/_____
                                        SUZANNE H. SEGAL
                                        UNITED STATES MAGISTRATE JUDGE

---

[3]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."